**MADDISON DUAL FUELS, INC., Appellant,**

v.

**SOUTHERN UNION CO., Appellee.**

No. 13–95–494–CV.

Court of Appeals of Texas, Corpus Christi.

April 24, 1997.

Rehearing Overruled May 22, 1997.

Thomas O. Matlock, Jr., McAllen, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, Stacy L. Keaton, Houston, for appellant.

Marshall R. Ray, Ransome & Ray, P.C., Brownsville, Daniel W. Bishop, II, Locke, Purnell, Rain & Harrell, Noel West Short, Austin, for appellant.

Before FEDERICO G. HINOJOSA, Jr., YAÑEZ, and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Maddison Dual Fuels, Inc. ("Maddison") appeals from a no-answer default judgment which resulted after Maddison failed to answer in a suit for breach of a purchase agreement. We reverse and remand.

## BACKGROUND

Southern Union Co. ("Southern") made a purchase order to Maddison for 123 fuel conversion kits to be used by the Rio Grande Valley School Districts for converting school bus engines to run on natural gas. In that purchase order, Southern specified that

> Equipment orders from each district will be processed by Southern Union Gas and forwarded as delivery requests to Maddison Dual Fuels. Maddison will ship the order to Southern Union for further delivery to the district. The district will be billed upon delivery of the equipment. Southern Union will in turn pay Maddison for each order upon receipt of payment from the district.

Maddison confirmed the purchase order for the kits at a price of $2,575 each, stating "We accept the terms of [your] order."

Nevertheless, after agreeing to Southern's terms, Maddison began shipping the kits without first receiving delivery requests from Southern. On each occasion, Southern complained to Maddison about its noncompliance with the purchase agreement, but was in-

structed by Maddison to simply store the goods in a warehouse until the school districts actually made their purchase requests.

Several months later, one of the school districts chose not to proceed with the fuel system conversion of its bus fleet, and it became apparent to Southern that it was going to be left with excess kits in storage. When asked what to do with the excess kits, Maddison informed Southern that it expected payment for all the kits that had been shipped. Southern attempted to return the goods, but Maddison refused to accept them.

Southern thus brought the present suit pursuant to the Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code, requesting the trial court to declare

- that the purchase agreement was valid,
- that Maddison had not performed all the conditions precedent to entitle it to payment of any additional amounts pursuant to the terms of the purchase agreement,
- that Southern had no obligation to pay Maddison for any of the goods in question absent final delivery of the goods to one of the school districts and payment for those goods by the school districts, and
- that Southern was not liable to Maddison for the purchase price of the goods or for any other claims.

Southern also sought recovery of its storage expenses and attorney's fees.

The citation was originally issued May 24, 1995, and service was attempted on Maddison's registered agent pursuant to the Original Petition, which states that Maddison "may be served with process by serving its registered agent, Barnard E. Brook, at 13313 S.W. Freeway, #290, Sugarland, Texas 77478." Service was unsuccessful due to a "bad address" as noted on the Diligence of Service form. The form names Maddison Dual Fuels, Inc. as the subject, but fails to name the registered agent upon whom service was attempted. The officer's return of service is blank with the exception of the stamped notation of the constable's address.

Citation was next issued on the Secretary of State's office on June 7, 1995, and the certificate from the Secretary of State shows that process, attempted to the same address as before, was returned on June 22 bearing the notation "no such number."

Upon Maddison's failure to appear, the court concluded that Maddison had been duly and legally cited, and wholly made default. The trial court made all four declarations requested in Southern's petition and further ordered that Southern recover $2,250 in storage costs and $5,000 in attorney's fees.

## JURISDICTION

By its first point of error, Maddison argues that the judgment is defective because it does not resolve all issues in controversy between the parties. Specifically, Maddison claims that the judgment is interlocutory because Southern was only awarded its costs up to the time of judgment, leaving storage costs which have accrued since the judgment unresolved. Maddison further argues that the judgment is not final because the court did not make a ruling on the ownership of the conversion kits. We hold that the trial court's judgment is final.

The determination of finality of a judgment is two-part. First, if the case is a conventional case, tried on the merits, we apply the presumption of finality. *Coastal Ref. & Mktg., Inc. v. Latimer*, 838 S.W.2d 570, 572 (Tex.App.—Corpus Christi 1992, writ denied)(citing *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966)). Second, if the judgment contains a Mother Hubbard clause, any question of finality is further dispelled. *Id.* Here, there is no presumption of finality because the case was tried by default. There is, however, a statement in the judgment that "All relief not granted herein is expressly denied." This Mother Hubbard clause made the judgment final by disposing of all parties and all claims. *Cf. Schlipf v. Exxon Corp.*, 644 S.W.2d 453 (Tex.1982)(the Mother Hubbard clause, even when used in a summary judgment case, expressly disposes of all parties and claims and constitutes a final judgment). Furthermore, the subject of the lawsuit was not the ownership of the kits. The suit was filed for a determination of whether

the purchase agreement was violated. We overrule appellant's first point of error.

## INADEQUATE SERVICE OF PROCESS

■ By its second point of error, Maddison contends that the default judgment was erroneously entered because Southern failed to exercise reasonable diligence in attempting to serve Maddison before resorting to substituted service on the Secretary of State. We agree.

■ Article 2.11 of the Texas Business Corporation Act provides that a domestic corporation, which maintains a registered agent within the state, may be served by delivering process to the president, any vice president, or the registered agent of the corporation. TEX.BUS.CORP.ACT ANN. art. 2.11(A) (Vernon 1980). In that regard, whenever a corporation fails to appoint or maintain a registered agent in this State, or whenever its registered agent cannot *with reasonable diligence* be found at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any such process, notice, or demand may be served. TEX.BUS.CORP.ACT ANN. art. 2.11(B) (Vernon 1980). Thus, a default judgment obtained after an attempted substituted service will not stand without a showing by the plaintiff that, before it resorted to service on the Secretary of State, it first used reasonable diligence in seeking service on the registered agent of the corporation at the registered office. *General Office Outfitters, Inc. v. Holt,* 670 S.W.2d 748, 749 (Tex.App.— Dallas 1984, no writ).

Southern sought service on Maddison's registered agent, Barnard E. Brook, and the petition and citation provided his address. The officer's return of service is blank. When a citation has been returned unserved, the officer's return must show the diligence used by the officer to execute the citation and the cause of his failure to execute it. TEX.R.CIV.P. 107; *David A. Carl Enters., Inc. v. Crow–Shutt #14,* 553 S.W.2d 118, 120 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). Here, the officer's return shows nothing; and if considered alone, does not show the prerequisite reasonable diligence necessary to support citation by service on the Secretary of State. Nevertheless, we may look to the entire record for evidence of diligence. *See RWL Constr., Inc. v. Erickson,* 877 S.W.2d 449, 451 (Tex.App.—Houston [1st Dist.] 1994, no writ); *General Office Outfitters,* 670 S.W.2d at 749.

Looking at the entire record, the only indication of an attempted service is found on a form entitled "Diligence of Service" which is attached to the blank return. On the "Diligence of Service" form, the officer stated that service was "not executed as to subject MADDISON DUAL FUELS, INC ... and the cause of failure to execute this process is "Bad Address." We find this statement unhelpful and deficient because the citation directed the officer to serve Maddison's registered agent, Barnard E. Brook—not Maddison Dual Fuels, the entity. In fact, the statute does not permit service on the intangible entity; service must be made on the president, vice president, or registered agent. TEX.BUS.CORP. ACT ANN. art. 2.11(A) (Vernon 1980). Furthermore, the form does not mention Brook or what attempts, if any, were made to locate him. Thus, even when looking to the entire record, we find no evidence of diligence in attempting to serve the registered agent that would have authorized Southern to execute substituted service on the Secretary of State. *See McKanna v. Edgar,* 388 S.W.2d 927, 929 (Tex.1965) (jurisdiction in an action based on substituted service of process must affirmatively appear on the face of the record). Insofar as substituted service was improperly sought, the trial court did not have jurisdiction over Maddison and thus erred in entering default judgment. *See Hanover Modular Homes of Taft v. Corpus Christi Bank & Trust,* 476 S.W.2d 97 (Tex.Civ.App.—Corpus Christi 1972, no writ) (if jurisdiction does not appear on the face of the record, judgment must be reversed). Maddison's first point of error is sustained.

Because Maddison's first point of error is dispositive of this appeal, we need not consider the remaining points of error. TEX. R.APP.P. 90(a).

Accordingly, we REVERSE and RE-MAND this cause for further proceedings.