In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00679-CV
__________

INGRAM INDUSTRIES, INC., Appellant

V.

U.S. BOLT MANUFACTURING, INC., Appellee




On Appeal from County Civil Court at Law No. One 
Harris County, Texas
Trial Court Cause No. 738447 




O P I N I O N

          Appellant, Ingram Industries, Inc. (Ingram Industries), takes a restricted appeal
from a default judgment rendered in favor of appellee, U.S. Bolt Manufacturing, Inc.
(U.S. Bolt). We address (1) whether U.S. Bolt exercised reasonable diligence in
seeking to serve Ingram Industries before resorting to substituted service, (2) whether
U.S. Bolt was required to comply strictly with Texas Rule of Civil Procedure 106 in
issuing and serving citation upon Ingram Industries, and (3) whether the face of the
record shows that the trial court properly awarded U.S. Bolt damages. We affirm.
Facts
          Ingram Industries filed articles of incorporation on June 20, 1974, naming
Richard Ingram as the designated registered agent and 605 Business Parkway,
Richardson, Texas as the registered address of Ingram Industries. It is undisputed
that Richard Ingram had moved from this registered address long before July 26,
2000 and that Ingram Industries did not notify the Secretary of State of a change of
address for its registered agent. On July 26, 2000, U.S. Bolt filed suit against Ingram
Industries, alleging that Ingram Industries had supplied U.S. Bolt with defective lock
nuts. 
          On August 22, 2000, a deputy attempted to serve Richard Ingram at the
registered address. The deputy returned the original citation unexecuted. U.S. Bolt
filed a motion for substituted service to serve Ingram through the Secretary of State,
which motion was granted. U.S. Bolt then served Ingram Industries by substituted
service on the Secretary of State. 
          Ingram Industries failed to answer. U.S. Bolt obtained a default judgment on
May 9, 2001. Ingram Industries filed a notice of restricted appeal.
Standard of Review
          An appellant filing a restricted appeal must demonstrate the following
elements: (1) the appellant appealed within six months after the judgment was
rendered, (2) the appellant was a party to the suit, (3) the appellant did not participate
in the actual trial of the case, and (4) error appears on the face of the record. See Tex.
R. App. P. 30; Quaestor Inv., Inc. v. State of Chiapas, 997 S.W.2d 226, 227 (Tex.
1999). 
          Because the parties do not dispute that the first three elements of a restricted
appeal have been met, we address whether error appears on the face of the record. 
Reasonable Diligence
          In its first point of error, Ingram Industries contends that U.S. Bolt did not
exercise “reasonable diligence” under Texas Business Corporations Act article
2.11(B) because (1) U.S. Bolt made only one attempt to serve Ingram Industries
before resorting to substituted service and (2) U.S. Bolt and its counsel knew the
address of Ingram Industries’ actual place of business, but did not serve the citation
at that address. See Tex. Bus. Corp. Act Ann. art. 2.11(B) (Vernon Supp. 2003).
           The Texas Business Corporations Act places upon corporations the duty to
maintain a registered agent and office and to notify the Secretary of State of any
change in either. See id. art. 2.11(A) (Vernon Supp. 2003); RWL Const., Inc. v.
Erickson, 877 S.W.2d 449, 451 (Tex. App.—Houston [1st Dist.] 1994, no writ). 
When the registered agent of a corporation cannot be found with reasonable diligence
at the registered office, the Secretary of State acts as agent of such corporation for
service of process. Id. art. 2.11(B). Thus, a default judgment obtained after an
attempted substituted service will not stand absent a showing by the plaintiff that,
before it resorted to substituted service, it first used reasonable diligence in seeking
service on the registered agent of the corporation. Maddison Dual Fuels, Inc. v. S.
Union Co., 944 S.W.2d 735, 738 (Tex. App.—Corpus Christi 1997, no writ). The
record must reflect strict compliance with the rules relating to the issuance, service,
and return of citation when a default judgment is directly attacked. See Hercules
Concrete Pumping Serv., Inc. v. Bencon Mgmt. & Gen. Contracting Corp., 62 S.W.3d
308, 309-10 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The record as a
whole, not only the unexecuted citation, may be considered to determine whether the
reasonable-diligence requirement is satisfied. G.F.S. Ventures, Inc. v. Harris, 934
S.W.2d 813, 816 (Tex. App.—Houston [1st Dist.] 1996, no writ).
          Ingram Industries first argues that U.S. Bolt did not exercise reasonable
diligence because U.S. Bolt made only one attempt to serve Ingram Industries before
resorting to substituted service under article 2.11(B) of the Texas Business
Corporations Act. See Tex. Bus. Corp. Act Ann. art. 2.11(B) (requiring reasonable
diligence in finding registered agent before resorting to service on Secretary of State). 
          On August 22, 2000, the deputy attempted to serve Richard Ingram, the
registered agent of Ingram Industries, at the registered address. The deputy returned
the original citation unexecuted, with a notation on the front of the citation of “B/A”
(“bad address”). In his affidavit, the deputy stated that, when he attempted service,
he did not find Richard Ingram at the registered address. Instead, the deputy found
that the people occupying the address had been there for 10 years and that the
premises were no longer occupied by Ingram Industries’s registered agent. In his
affidavit, the deputy further stated that Ingram Industries’s registered agent “could not
be found with reasonable diligence.” 
          The return of service is prima facie evidence of the facts recited therein. 
Harris, 934 S.W.2d at 816. Here, the return stated the date on which service was
attempted, the person upon whom service was attempted, and the cause of the failure
to execute the citation. The return is clear that the address on the citation was not the
actual address of Ingram Industries, but that this location had been occupied by some
other person or entity for the past 10 years. Therefore, we hold that U.S. Bolt’s one
attempt to serve Ingram Industries before resorting to substitute service constituted
reasonable diligence.



          Ingram Industries also argues that U.S. Bolt did not exercise reasonable
diligence because U.S. Bolt and its counsel knew the address of Ingram Industries’s
actual place of business, but did not serve the citation at that address.


 Ingram
Industries contends that the deputy who attempted to serve process on Ingram
Industries should have asked a U.S. Bolt representative or its counsel whether either
of them knew of another address at which Ingram Industries could be served. 
          There is no requirement under article 2.11(B) that U.S. Bolt also attempt to
serve Richard Ingram at Ingram Industries’s place of business, in addition to serving
him at the address filed with the Secretary of State for Ingram Industries. See Tex.
Bus. Corp. Act Ann. art. 2.11(B); Houston’s Wild West, Inc. v. Salinas, 690 S.W.2d
30, 32 (Tex. App.—Houston [14th Dist.] 1985, writ ref’d n.r.e.) (holding that plaintiff
is not required to serve president or vice president of corporation at actual place of
business not listed with Secretary of State); see also TXXN, Inc. v. D/FW Steel Co.,
632 S.W.2d 706, 708 (Tex. App.—Fort Worth 1982, no writ) (stating that, in serving
process on corporation, plaintiff is not required to attempt service on address found
on invoice because such address did not create presumption that corporation was
amenable to service there). Therefore, we hold that U.S. Bolt demonstrated
reasonable diligence even though it did not serve the citation on Ingram Industries’s
actual place of business.
          We overrule Ingram Industries’s first point of error.
Compliance with Rule 106 
          In its second point of error, Ingram Industries contends that the trial court erred
in granting U.S. Bolt’s motion for substituted service because Texas Rule of Civil
Procedure 106 applied and U.S. Bolt failed to comply strictly with that rule. Ingram
Industries argues that, if this Court determines that substituted service should have
been effected pursuant to rule 106, rather than pursuant to Texas Business
Corporation Act article 2.11(B), we should vacate the judgment because U.S. Bolt
failed to comply strictly with rule 106.  
          The face of the citation shows that U.S. Bolt requested service upon Ingram
Industries by serving the Secretary of State. The heading of the citation mistakenly
stated, “Rule 106 Cert. Mail Ret. Receipt Req. Citation,” rather than stating that
citation was authorized under article 2.11(B).  
          Strict compliance under rule 106 is not necessary because it is evident from the
record that substituted service was requested under article 2.11(B), rather than under
rule 106. See Conseco Fin. Servicing, Inc. v. Klein Indep. Sch. Dist., 78 S.W.3d 666,
675-76 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating purpose of citation
is merely to give notice to defendant that it has been sued, by whom, and for what
reason). Further, under Texas Rule of Civil Procedure 99, which governs the
issuance and form of citations, a party serving a citation is not required to list the
operable rule of procedure or statute under which that party is given the authority to
serve a citation. See Tex. R. Civ. P. 99. Thus, U.S. Bolt was not required to include
in its citation that it was authorized to issue and to serve the citation under article
2.11(B), and the erroneous reference to rule 106 did not require U.S. Bolt to comply
with rule 106.  
          We overrule Ingram Industries’s second point of error. 
Damages
          In its third point of error, Ingram Industries contends that the evidence was
legally insufficient to support U.S. Bolt’s consequential, unliquidated damages. 
Ingram Industries argues that the trial court erred by awarding damages against
Ingram Industries because (1) U.S. Bolt failed to plead specifically for consequential
damages specifically and (2) no hearing was held to determine U.S. Bolt’s
unliquidated damages.
 
          Ingram Industries first complains that the trial court erred by awarding damages
against it because U.S. Bolt failed to plead specifically for consequential damages. 
In its original petition, U.S. Bolt recited facts showing that it sent some of the locking
nuts to a third party, which determined that the locking nuts were defective. U.S. Bolt
pleaded the following in its original petition:
As a result [of Ingram Industries’s supply of defective locking nuts],
Plaintiff’s end user incurred expensive delays and costs, resulting in
Plaintiff incurring additional costs in the amount of Nine Thousand
Three Hundred and Forty-Seven and 60/100 Dollars ($9,347.60) to
remedy Defendant’s faulty and defective workmanship.

We hold that this recitation is sufficient to provide Ingram Industries with fair notice
that U.S. Bolt was seeking consequential damages. See Tex. R. Civ. P. 45, 47
(requiring that pleadings give fair notice to parties of claim asserted); Paramount
Pipe & Supply Co. v. Muhr, 749 S.W.2d 491, 494 (Tex. 1988) (stating that purpose
of fair-notice requirement is to provide opposing party with sufficient information to
prepare defense).
          Second, and alternatively, U.S. Bolt argues that the trial court erred by
awarding damages against Ingram Industries because no hearing was held to
determine U.S. Bolt’s unliquidated damages. Rule 243 requires that a hearing be held
before a trial court may award unliquidated damages. See Tex. R. Civ. P. 243;
Atwood v. B & R Supply & Equip. Co., Inc., 52 S.W.3d 265, 268 (Tex. App.—Corpus
Christi 2001, no pet.). 
 
          In its original petition, U.S. Bolt alleged that Ingram Industries had contracted
with U.S. Bolt to perform a process of locking the nylon rings on certain lock nuts
supplied by U.S. Bolt. U.S. Bolt stated that, after Ingram Industries had finished the
locking process, U.S. Bolt sent some of the lock nuts to a third party for installation
in New Zealand. However, according to U.S. Bolt, this third party determined that
the lock nuts were defective. U.S. Bolt alleged that it determined that one of Ingram
Industries’s locking operators had applied an extra, unspecified step in the process
to tighten the nylon rings, which action caused the defect. As a result, U.S. Bolt
claimed that it incurred costs in the amount of $9,347.60.
           U.S. Bolt’s motion for default judgment was supported by the affidavit
testimony of Bill Pursell, general manager of and custodian of records for U.S. Bolt,
which affidavit listed the following items as U.S. Bolt’s damages:
           (1)     $5,000.00 for a settlement between G.E. and U.S. Bolt,



          (2)     $1,972.39 for “Cost to remake 42 nuts,”
          (3)     $375.00 for “Hot Shot freight to and from Coloc,”
          (4)     $567.83 for “Expedited freight New Zealand,”
          (5)     $1,030.63 for “Cost for 21 scrapped nut at our facility,”
          (6)     $56.95 for “Freight to and from Coloc,”
          (7)     $54.40 for “Freight to the customer,” and
          (8)     $290.40 for “Commission on sale of 20 returned parts.”
Without first holding a hearing, the trial court awarded U.S. Bolt all of the above
items as damages. 
          Both parties claim that at least some of the above items are unliquidated
damages. See Tex. R. Civ. P. 243 (“Unliquidated damages are damages which cannot
be proved by a written instrument”). In contrast, the record shows that the trial court
considered the damages to be liquidated because the default judgment stated that the
damages were “wholly liquidated.” 
          The damages listed by U.S. Bolt do have the appearance of being liquidated
because they seem to be capable of proof by written instruments. However, the
written instruments, such as invoices or receipts, were not produced along with the
affidavit. See Tex. R. Civ. P. 241 (relating to liquidated damages); Novosad v.
Cunningham, 38 S.W.3d 767, 773 (Tex. App.—Houston [14th Dist.] 2001, no pet.)
(stating that claim is liquidated if amount of damages may be accurately calculated
by trial court from factual, as opposed to conclusory, allegations in plaintiff’s petition
and from instrument in writing). Therefore, the damages should have been treated as
unliquidated, despite the judgement’s recitation that they were liquidated. See Abcon
Paving, Inc. v. Crissup, 820 S.W.2d 951, 953 (Tex. App.—Fort Worth 1991, no pet.).
(holding that damages must be proven in accordance with Rule 243 if no “instrument
in writing” was presented to the trial court).
          A trial court may award unliquidated damages based on affidavit testimony. 
See Tex. Commerce Bank v. New, 3 S.W.3d 515, 516-17 (Tex. 1999) (holding that,
in no-answer default judgment, affidavits, as unobjected-to hearsay, constitute
probative evidence, thereby satisfying Rule 243’s requirement that there be evidence
of unliquidated damages). The default judgment recited that the trial court based the
award of damages on its consideration of “the pleadings and evidence on file.” The
evidence on file contained Pursell’s affidavit. Pursell’s affidavit set out U.S. Bolt’s
damages. The trial court thus considered Pursell’s affidavit to be proof of U.S. Bolt’s
damages. Therefore, the trial court satisfied Rule 243's hearing requirement without
the need of holding an evidentiary hearing. See New, 3 S.W.3d at 516-17.
          For these reasons, we hold that the record indicates that the trial court properly
awarded damages to U.S. Bolt. We thus hold that there is no error on the face of the
record.
          We overrule Ingram Industries’ third point of error.
 
 
 
 
Conclusion
          We affirm the judgment of the trial court. 
 
                                                                        Tim Taft
                                                                        Justice

Panel consists of Justices Taft, Alcala, and Price.