**INGRAM INDUSTRIES, INC., Appellant,**

v.

**U.S. BOLT MANUFACTURING, INC., Appellee.**

No. 01–01–00679–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 17, 2003.

Rehearing Overruled Oct. 2, 2003.

Henry James Fasthoff, Stumpf Craddock Massey & Pulman, Houston, TX, for Appellant.

Thomas Edward Reder, Houston, TX, for Appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

## OPINION

TIM TAFT, Justice.

Appellant, Ingram Industries, Inc. (Ingram Industries), takes a restricted appeal from a default judgment rendered in favor of appellee, U.S. Bolt Manufacturing, Inc. (U.S. Bolt). We address (1) whether U.S. Bolt exercised reasonable diligence in seeking to serve Ingram Industries before resorting to substituted service, (2) whether U.S. Bolt was required to comply strictly with Texas Rule of Civil Procedure 106 in issuing and serving citation upon Ingram Industries, and (3) whether the face of the record shows that the trial court properly awarded U.S. Bolt damages. We affirm.

## Facts

Ingram Industries filed articles of incorporation on June 20, 1974, naming Richard Ingram as the designated registered agent and 605 Business Parkway, Richardson, Texas as the registered address of Ingram Industries. It is undisputed that Richard Ingram had moved from this registered address long before July 26, 2000 and that Ingram Industries did not notify the Secretary of State of a change of address for its registered agent. On July 26, 2000, U.S. Bolt filed suit against Ingram Industries, alleging that Ingram Industries had supplied U.S. Bolt with defective lock nuts.

On August 22, 2000, a deputy attempted to serve Richard Ingram at the registered address. The deputy returned the original citation unexecuted. U.S. Bolt filed a motion for substituted service to serve Ingram through the Secretary of State, which motion was granted. U.S. Bolt then served Ingram Industries by substituted service on the Secretary of State.

Ingram Industries failed to answer. U.S. Bolt obtained a default judgment on May 9, 2001. Ingram Industries filed a notice of restricted appeal.

## Standard of Review

An appellant filing a restricted appeal must demonstrate the following elements: (1) the appellant appealed within six months after the judgment was rendered, (2) the appellant was a party to the suit, (3) the appellant did not participate in the actual trial of the case, and (4) error appears on the face of the record. *See* TEX. R.APP. P. 30; *Quaestor Inv., Inc. v. State of Chiapas*, 997 S.W.2d 226, 227 (Tex. 1999).

Because the parties do not dispute that the first three elements of a restricted appeal have been met, we address whether error appears on the face of the record.

## Reasonable Diligence

In its first point of error, Ingram Industries contends that U.S. Bolt did not exercise "reasonable diligence" under Texas Business Corporations Act article 2.11(B) because (1) U.S. Bolt made only one attempt to serve Ingram Industries before resorting to substituted service and (2) U.S. Bolt and its counsel knew the address

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

of Ingram Industries' actual place of business, but did not serve the citation at that address. *See* TEX. BUS. CORP. ACT ANN. art. 2.11(B) (Vernon Supp.2003).

■ The Texas Business Corporations Act places upon corporations the duty to maintain a registered agent and office and to notify the Secretary of State of any change in either. *See id.* art. 2.11(A) (Vernon Supp.2003); *RWL Const., Inc. v. Erickson,* 877 S.W.2d 449, 451 (Tex.App.-Houston [1st Dist.] 1994, no writ). When the registered agent of a corporation cannot be found with reasonable diligence at the registered office, the Secretary of State acts as agent of such corporation for service of process. *Id.* art. 2.11(B). Thus, a default judgment obtained after an attempted substituted service will not stand absent a showing by the plaintiff that, before it resorted to substituted service, it first used reasonable diligence in seeking service on the registered agent of the corporation. *Maddison Dual Fuels, Inc. v. S. Union Co.,* 944 S.W.2d 735, 738 (Tex.App.-Corpus Christi 1997, no writ). The record must reflect strict compliance with the rules relating to the issuance, service, and return of citation when a default judgment is directly attacked. *See Hercules Concrete Pumping Serv., Inc. v. Bencon Mgmt. & Gen. Contracting Corp.,* 62 S.W.3d 308, 309–10 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). The record as a whole, not only the unexecuted citation, may be considered to determine whether the reasonable-diligence requirement is satisfied. *G.F.S. Ventures, Inc. v. Harris,* 934 S.W.2d 813, 816 (Tex.App.-Houston [1st Dist.] 1996, no writ).

■ Ingram Industries first argues that U.S. Bolt did not exercise reasonable diligence because U.S. Bolt made only one attempt to serve Ingram Industries before resorting to substituted service under article 2.11(B) of the Texas Business Corporations Act. *See* TEX. BUS. CORP. ACT ANN. art. 2.11(B) (requiring reasonable diligence in finding registered agent before resorting to service on Secretary of State).

On August 22, 2000, the deputy attempted to serve Richard Ingram, the registered agent of Ingram Industries, at the registered address. The deputy returned the original citation unexecuted, with a notation on the front of the citation of "B/A" ("bad address"). In his affidavit, the deputy stated that, when he attempted service, he did not find Richard Ingram at the registered address. Instead, the deputy found that the people occupying the address had been there for 10 years and that the premises were no longer occupied by Ingram Industries's registered agent. In his affidavit, the deputy further stated that Ingram Industries's registered agent "could not be found with reasonable diligence."

■ The return of service is prima facie evidence of the facts recited therein. *Harris,* 934 S.W.2d at 816. Here, the return stated the date on which service was attempted, the person upon whom service was attempted, and the cause of the failure to execute the citation. The return is clear that the address on the citation was not the actual address of Ingram Industries, but that this location had been occupied by some other person or entity for the past 10 years. Therefore, we hold that U.S. Bolt's one attempt to serve Ingram Industries before resorting to substitute service constituted reasonable diligence.[1]

1. Although Ingram Industries claims that one attempt to serve process cannot qualify as reasonable diligence, Ingram Industries does not cite any authority to support this proposition. Further, we have previously found that one attempt to serve process can be sufficient to show reasonable diligence. *See G.F.S. Ven-*

Ingram Industries also argues that U.S. Bolt did not exercise reasonable diligence because U.S. Bolt and its counsel knew the address of Ingram Industries's actual place of business, but did not serve the citation at that address.[2] Ingram Industries contends that the deputy who attempted to serve process on Ingram Industries should have asked a U.S. Bolt representative or its counsel whether either of them knew of another address at which Ingram Industries could be served.

There is no requirement under article 2.11(B) that U.S. Bolt also attempt to serve Richard Ingram at Ingram Industries's place of business, in addition to serving him at the address filed with the Secretary of State for Ingram Industries. *See* TEX. BUS. CORP. ACT ANN. art. 2.11(B); *Houston's Wild West, Inc. v. Salinas*, 690 S.W.2d 30, 32 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.) (holding that plaintiff is not required to serve president or vice president of corporation at actual place of business not listed with Secretary of State); *see also TXXN, Inc. v. D/FW Steel Co.*, 632 S.W.2d 706, 708 (Tex.App.-Fort Worth 1982, no writ) (stating that, in serving process on corporation, plaintiff is not required to attempt service on address found on invoice because such address did not create presumption that corporation was amenable to service there). Therefore, we hold that U.S. Bolt demonstrated reasonable diligence even though it did not serve the citation on Ingram Industries's actual place of business.

We overrule Ingram Industries's first point of error.

**Compliance with Rule 106**

▮ In its second point of error, Ingram Industries contends that the trial court erred in granting U.S. Bolt's motion for substituted service because Texas Rule of Civil Procedure 106 applied and U.S. Bolt failed to comply strictly with that rule. Ingram Industries argues that, if this Court determines that substituted service should have been effected pursuant to rule 106, rather than pursuant to Texas Business Corporation Act article 2.11(B), we should vacate the judgment because U.S. Bolt failed to comply strictly with rule 106.

The face of the citation shows that U.S. Bolt requested service upon Ingram Industries by serving the Secretary of State. The heading of the citation mistakenly stated, "Rule 106 Cert. Mail Ret. Receipt Req. Citation," rather than stating that citation was authorized under article 2.11(B).

Strict compliance under rule 106 is not necessary because it is evident from the record that substituted service was requested under article 2.11(B), rather than under rule 106. *See Conseco Fin. Servicing, Inc. v. Klein Indep. Sch. Dist.*, 78 S.W.3d 666, 675–76 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (stating purpose of citation is merely to give notice to defendant that it has been sued, by whom, and for what reason). Further, under Texas Rule of Civil Procedure 99, which governs the issuance and form of citations, a party serving a citation is not required to list the operable rule of procedure or statute under which that party is given the authority to serve a citation. *See* TEX.R. CIV. P. 99. Thus, U.S. Bolt was not required to include in its citation that it was

---

*tures, Inc. v. Harris*, 934 S.W.2d 813, 816–17 (Tex.App.-Houston [1st Dist.] 1996, no writ).

**2.** Ingram Industries attaches correspondence demonstrating that counsel for U.S. Bolt knew where Ingram Industries' place of busi-

ness was located. Because this correspondence was not part of the record, we may not consider it on appeal. *See Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex.1990).

authorized to issue and to serve the citation under article 2.11(B), and the erroneous reference to rule 106 did not require U.S. Bolt to comply with rule 106.

We overrule Ingram Industries's second point of error.

### Damages

In its third point of error, Ingram Industries contends that the evidence was legally insufficient to support U.S. Bolt's consequential, unliquidated damages. Ingram Industries argues that the trial court erred by awarding damages against Ingram Industries because (1) U.S. Bolt failed to plead specifically for consequential damages specifically and (2) no hearing was held to determine U.S. Bolt's unliquidated damages.

■ Ingram Industries first complains that the trial court erred by awarding damages against it because U.S. Bolt failed to plead specifically for consequential damages. In its original petition, U.S. Bolt recited facts showing that it sent some of the locking nuts to a third party, which determined that the locking nuts were defective. U.S. Bolt pleaded the following in its original petition:

> As a result [of Ingram Industries's supply of defective locking nuts], Plaintiff's end user incurred expensive delays and costs, resulting in Plaintiff incurring additional costs in the amount of Nine Thousand Three Hundred and Forty–Seven and 60/100 Dollars ($9,347.60) to remedy Defendant's faulty and defective workmanship.

We hold that this recitation is sufficient to provide Ingram Industries with fair notice that U.S. Bolt was seeking consequential damages. See Tex.R. Civ. P. 45, 47 (requiring that pleadings give fair notice to parties of claim asserted); *Paramount*

*Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex.1988) (stating that purpose of fair-notice requirement is to provide opposing party with sufficient information to prepare defense).

Second, and alternatively, U.S. Bolt argues that the trial court erred by awarding damages against Ingram Industries because no hearing was held to determine U.S. Bolt's unliquidated damages. Rule 243 requires that a hearing be held before a trial court may award unliquidated damages. See Tex.R. Civ. P. 243; *Atwood v. B & R Supply & Equip. Co., Inc.*, 52 S.W.3d 265, 268 (Tex.App.-Corpus Christi 2001, no pet.).

In its original petition, U.S. Bolt alleged that Ingram Industries had contracted with U.S. Bolt to perform a process of locking the nylon rings on certain lock nuts supplied by U.S. Bolt. U.S. Bolt stated that, after Ingram Industries had finished the locking process, U.S. Bolt sent some of the lock nuts to a third party for installation in New Zealand. However, according to U.S. Bolt, this third party determined that the lock nuts were defective. U.S. Bolt alleged that it determined that one of Ingram Industries's locking operators had applied an extra, unspecified step in the process to tighten the nylon rings, which action caused the defect. As a result, U.S. Bolt claimed that it incurred costs in the amount of $9,347.60.

U.S. Bolt's motion for default judgment was supported by the affidavit testimony of Bill Pursell, general manager of and custodian of records for U.S. Bolt, which affidavit listed the following items as U.S. Bolt's damages:

(1) $5,000.00 for a settlement between G.E. and U.S. Bolt,[3]

---

3. G.E. is allegedly the third party to whom U.S. Bolt sent some of the lock nuts.

(2) $1,972.39 for "Cost to remake 42 nuts,"

(3) $375.00 for "Hot Shot freight to and from Coloc,"

(4) $567.83 for "Expedited freight New Zealand,"

(5) $1,030.63 for "Cost for 21 scrapped nut at our facility,"

(6) $56.95 for "Freight to and from Coloc,"

(7) $54.40 for "Freight to the customer," and

(8) $290.40 for "Commission on sale of 20 returned parts."

Without first holding a hearing, the trial court awarded U.S. Bolt all of the above items as damages.

Both parties claim that at least some of the above items are unliquidated damages. *See* Tex.R. Civ. P. 243 ("Unliquidated damages are damages which cannot be proved by a written instrument"). In contrast, the record shows that the trial court considered the damages to be liquidated because the default judgment stated that the damages were "wholly liquidated."

■ The damages listed by U.S. Bolt do have the appearance of being liquidated because they seem to be capable of proof by written instruments. However, the written instruments, such as invoices or receipts, were not produced along with the affidavit. *See* Tex.R. Civ. P. 241 (relating to liquidated damages); *Novosad v. Cunningham*, 38 S.W.3d 767, 773 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (stating that claim is liquidated if amount of damages may be accurately calculated by trial court from factual, as opposed to conclusory, allegations in plaintiff's petition and from instrument in writing). Therefore, the damages should have been treated as unliquidated, despite the judgement's recitation that they were liquidated. *See Abcon Paving, Inc. v. Crissup*, 820 S.W.2d

951, 953 (Tex.App.-Fort Worth 1991, no pet.). (holding that damages must be proven in accordance with Rule 243 if no "instrument in writing" was presented to the trial court).

■ A trial court may award unliquidated damages based on affidavit testimony. *See Tex. Commerce Bank v. New*, 3 S.W.3d 515, 516–17 (Tex.1999) (holding that, in no-answer default judgment, affidavits, as unobjected-to hearsay, constitute probative evidence, thereby satisfying Rule 243's requirement that there be evidence of unliquidated damages). The default judgment recited that the trial court based the award of damages on its consideration of "the pleadings and evidence on file." The evidence on file contained Pursell's affidavit. Pursell's affidavit set out U.S. Bolt's damages. The trial court thus considered Pursell's affidavit to be proof of U.S. Bolt's damages. Therefore, the trial court satisfied Rule 243's hearing requirement without the need of holding an evidentiary hearing. *See New*, 3 S.W.3d at 516–17.

For these reasons, we hold that the record indicates that the trial court properly awarded damages to U.S. Bolt. We thus hold that there is no error on the face of the record.

We overrule Ingram Industries' third point of error.

### Conclusion

We affirm the judgment of the trial court.