**MARROT COMMUNICATIONS, INC., Appellant,**

v.

**TOWN & COUNTRY PARTNERSHIP d/b/a Town & Country Village, Appellee.**

No. 01–06–00068–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 31, 2007.

Rehearing Overruled July 24, 2007.

Lawrence S. Rothenberg, Houston, TX, for Appellant.

Joseph O. Slovacek, Thi Anh Tran, James H. Leeland, Hoover Slovacek, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Marrot Communications, Inc. ("Marrot"), challenges the trial court's no-answer default judgment rendered in favor of appellee, Town & Country Partnership doing business as Town & Country Village ("Town & Country"), in Town & Country's suit against Marrot for breach of contract, fraud, conversion, and quantum meruit/unjust enrichment. In three issues, Marrot contends that the trial court erred in denying Marrot's motion for new trial "based on defective service" and, alternatively, "under the *Craddock* test,"[1] and in awarding Town & Country "tort/punitive damages."

We reverse and remand.

### Factual and Procedural Background

In its original petition, dated August 26, 2005, Town & Country alleged that on or about January 26, 2005, it entered into a "Media Services Agreement" with Marrot. Under the contract, Marrot was required,

---

1. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex. 1939).

among other things, to negotiate on behalf of Town & Country with local television stations for advertising air time, coordinate and plan the media to be broadcasted, manage and administer the advertising account, and pay the stations for air time allocated to and used by Town & Country. In particular, Town & Country entrusted Marrot with $200,000, $125,000 of which was to be paid to the stations for advertising between March 21, 2005, and May 29, 2005 (the "Spring Flight"). The remaining $75,000 was to be paid to the stations for advertising between November 21, 2005 and December 24, 2005 (the "Christmas Holiday Flight").

Town & Country further alleged that despite the Spring Flight being run by the media, Marrot never paid the stations the $125,000 fee for the advertising time. Instead, Marrot kept the money for its own use and benefit, contrary to its express agreement to pay for this advertising time from the $200,000 provided by Town & Country for this special purpose. As a result of not receiving payment for the Spring Flight, the stations refused to run the Christmas Holiday Flight.

In its first amended original petition, dated September 2, 2005, Town & Country alleged that Marrot "failed to properly maintain a registered agent for service" and requested substituted service, pursuant to the Texas Business Corporations Act,[2] through the Secretary of State. After filing its amended petition, Town & Country then served Marrot by substituted service on the Secretary of State, as indicated by a certificate from the Secretary of State, filed by Town & Country with the trial court on October 20, 2005.

Marrot failed to answer, and Town & Country filed its motion for default judgment on November 3, 2005, alleging that "service was effectuated on [Marrot] through the Texas Secretary of State as of September 26, 2005, making [Marrot's] answer deadline October 17, 2005," and that proof of service had been on file with the trial court for more than ten days.[3]

The trial court signed its default judgment on November 15, 2005, reciting that it found and determined that Marrot had "been, duly, regularly and lawfully served with Citation and process in the form and manner and for the length of time required by law, and the return of Citation has been on file with the [trial court] for more than ten (10) days (exclusive of the date of filing and the date of judgment), but [Marrot] has failed to appear to make answer and wholly made default. . . . "

Marrot, on December 9, 2005, filed its motion for new trial,[4] asserting that service was defective and, alternatively, that a new trial should be granted under *Craddock*. Marrot alleged that "[t]he record reflects that service was effectuated on the Secretary of State and not on [Marrot's] duly registered agent" and "[t]here is no constable's (or private process server's) return in the record reflecting attempted service on [Marrot] through its registered agent."

In its response, Town & Country asserted that service was attempted on Marrot's registered agent. Town & Country attached to its response the affidavit of the process server, Joel L. Hershey.[5] In his affidavit, Hershey testified that he attempted to serve a copy of the petition and

---

**2.** *See* Tex. Bus. Corp. Act Ann. art. 2.11, § B (Vernon Supp.2006).

**3.** *See* Tex.R. Civ. P. 107.

**4.** *See* Tex.R. Civ. P. 329b.

**5.** Hershey's affidavit appears in the record only as exhibit "B" to Town & Country's response to Marrot's motion for new trial.

citation on Mark Rothenberg, Marrot's agent registered with the Secretary of State, at 7026 Old Katy Road, Suite 210, Houston, Texas 77024, on August 30, 2005, at 2:10 p.m., but the registered office was vacant. Town & Country argued that because Marrot failed to maintain a registered agent at the registered address, Town & Country "effectuated service on [Marrot] through the Secretary of State . . . as evidenced by the [certificate from the Secretary of State]." [6]

The trial court denied Marrot's motion for new trial.

### Defective Service

In its first issue, Marrot argues that the trial court erred in denying its motion for new trial on the ground of defective service because the record, prior to the entry of the default judgment, contains no evidence that Town & Country attempted to serve Marrot's registered agent at the registered office or used reasonable diligence in attempting to serve Marrot's registered agent prior to serving the Secretary of State. Marrot concludes that Town & Country's service of process was defective as a matter of law and deprived it of both substantive and procedural due process.

■■■ At any time after a defendant is required to answer, a plaintiff may take judgment by default against the defendant if the defendant has not previously filed an answer and the citation with proof of service has been on file with the clerk of the court for ten days. TEX.R. CIV. P. 107, 239. Before a trial court may properly render a default judgment, the record must reflect that the trial court has jurisdiction of the subject matter and the parties and that the case is ripe for judgment. *Finlay v.*

*Jones,* 435 S.W.2d 136, 138 (Tex.1968). A trial court has "no more solemn judicial obligation than that of seeing that no litigant is unjustly saddled with a judgment in the absence of notice and a hearing." *Id.* at 138–39. When determining whether a case is ripe for judgment, the trial court has a "judicial duty to ascertain and determine" that the defendant has been "duly served with citation" and has no answer on file. *Id.* at 139. Unless the record affirmatively shows, "at the time the default judgment is entered," either an appearance by the defendant, proper service of citation on the defendant, or a written memorandum of waiver, the trial court does not have in personam jurisdiction to enter the default judgment against the defendant. *Am. Universal Ins. Co. v. D.B. & B., Inc.,* 725 S.W.2d 764, 766 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.); *see also Cates v. Pon,* 663 S.W.2d 99, 101–02 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.). The Texas Supreme Court has explained that even "[a]ctual notice to a defendant," after defective substituted service, is "not sufficient to convey upon the court jurisdiction to render default judgment against him." *Wilson v. Dunn,* 800 S.W.2d 833, 836 (Tex.1990). As noted by one court of appeals, "[v]irtually any deviation from the statutory requisites for service of process will destroy a default judgment." *Carmona v. Bunzl Distribution,* 76 S.W.3d 566, 568–69 (Tex.App.-Corpus Christi 2002, no pet.).

■■■ The Texas Business Corporations Act places upon corporations the duty to maintain a registered agent and office and to notify the Secretary of State of any change in either. *See* TEX. BUS. CORP. ACT ANN. art. 2.11, § B (Vernon Supp.2006); *Ingram Indus., Inc. v. U.S.*

---

**6.** The certificate from the Secretary of State is attached as exhibit "C" to Town & Country's response to Marrot's motion for new trial.

*Bolt Mfg., Inc.*, 121 S.W.3d 31, 34 (Tex. App.-Houston [1st Dist.] 2003, no pet.). Article 2.11, section B, provides in pertinent part,

> Whenever a corporation shall fail to appoint or maintain a registered agent in this State, or whenever its registered agent *cannot with reasonable diligence be found* at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any such process, notice, or demand may be served.

TEX. BUS. CORP. ACT ANN. art. 2.11, § B (emphasis added). Only after the registered agent of a corporation cannot be found with reasonable diligence at the registered office can the Secretary of State act as agent of the corporation for service of process. *Ingram Indus., Inc.*, 121 S.W.3d at 34. "Thus, a default judgment obtained after an attempted substituted service [on the Secretary of State] will not stand absent a showing by the plaintiff that, before it resorted to substituted service [on the Secretary of State], it first used reasonable diligence in seeking service on the registered agent of the corporation." *Id.* This Court has noted that one attempt to serve process on the registered agent, when subsequent attempts would be futile, may be sufficient to establish "reasonable diligence." *Id.*

Marrot asserts that, at the time the trial court entered the default judgment against it, the record was completely devoid of any evidence of attempted service on its registered agent, let alone evidence of diligence in attempting such service. Marrot further asserts that Town & Country recognized this deficiency and attempted, post-judgment, to correct the defective service by filing the process server's affidavit in response to Marrot's motion for new trial. Marrot contends that the affidavit cannot be considered because we are to examine the record as it existed at the time the judgment was entered.

In fact, when Town & Country filed its first amended original petition, requesting substituted service on the Secretary of State under article 2.11, section B, although it alleged that Marrot "failed to properly maintain a registered agent for service" at the registered address, there was nothing in the record to indicate to the trial court that Town & Country had demonstrated reasonable diligence in seeking service on Mark Rothenberg, Marrot's registered agent. Again, prior to seeking substituted service on the Secretary of State, a plaintiff must first show the trial court that it used reasonable diligence in seeking service on the registered agent of the corporation. *Id.* Here, at the time Town & Country sought substituted service, and when the trial court subsequently entered the default judgment, the record did not contain either an unexecuted return of citation, a process server's affidavit, or a motion for substituted service.

Town & Country asserts that "[a]s evidenced by a Certificate of the Secretary of State, filed with the trial court, the amended petition and citation were duly served on the Secretary of State on September 19, 2005, with a copy forwarded to Marrot's Registered Agent by certified mail, return receipt requested, at the last known Registered Address on September 26, 2005." Town & Country contends that, "[a]s evidenced by the Certificate of the Secretary of State, the substituted service was properly exercised by Town & Country upon Marrot through its agent, the Secretary of State."

■ The Texas Supreme Court has stated that absent fraud or mistake, a Secretary of State's certificate constitutes conclusive evidence that the Secretary of State, as agent of the defendant, received service of process for the defendant and

forwarded the service as required by the statute. *Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464, 465 (Tex.2004); *Capitol Brick, Inc. v. Fleming Mfg. Co., Inc.*, 722 S.W.2d 399, 401 (Tex.1986). Thus, the certificate may conclusively establish that process was served. *See Cullever*, 144 S.W.3d at 466. However, the supreme court in *Cullever* did not state that the certificate establishes that a defendant's registered agent could not, "with reasonable diligence be found at the registered office" as required by article 2.11, section B. As noted above, a plaintiff must establish, before resorting to substituted service on the Secretary of State, that it used reasonable diligence in seeking service on the registered agent of a corporation. *Ingram Indus., Inc.*, 121 S.W.3d at 34. A default judgment is simply improper against a defendant who has not been served in strict compliance with the law. *Wilson*, 800 S.W.2d at 837.

■ Town & Country asserts that the affidavit of Hershey, its process server, establishes that it used reasonable diligence in seeking service on Rothenberg, Marrot's registered agent. Hershey in fact testified that he attempted to serve Rothenberg, but he found the registered office vacant. However, this evidence was not in the record and before the trial court when it entered the default judgment against Marrot.

Nevertheless, Town & Country argues that we must consider Hershey's affidavit because "on appeal, the reviewing court scrutinizes the *entire record* to determine whether service was valid," citing *Ingram Industries, Inc.*, 121 S.W.3d at 34 ("The record as a whole, not only the unexecuted citation, may be considered to determine whether the reasonable-diligence requirement is satisfied") and *G.F.S. Ventures, Inc. v. Harris*, 934 S.W.2d 813, 816 (Tex. App.-Houston [1st Dist.] 1996, no writ)

(same). In response, Marrot argues that we cannot consider Hershey's affidavit because it was not before the trial court at the time of the entry of the default judgment, citing *Tankard–Smith, Inc. General Contractors v. Thursby*, 663 S.W.2d 473, 476 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.) (in assessing validity of default judgment, appellate court may only consider record before trial court as it existed prior to entering default judgment). *See also Hot Shot Messenger Serv., Inc. v. State of Texas*, 818 S.W.2d 905 (Tex.App.-Austin 1991, no writ); *Thomas Petroleum Prods., Inc. v. Rulon Elec. Co., Inc.*, 609 S.W.2d 890 (Tex.App.-Houston [14th Dist.] 1980, no writ).

However, we again note that in order for a default judgment to be properly rendered, the record must affirmatively show, *at the time the default judgment is entered*, either an appearance by the defendant, proper service of citation on the defendant, or a written memorandum of waiver. *See Carmona*, 76 S.W.3d at 568. Otherwise, the trial court does not have in personam jurisdiction to enter a default judgment against the defendant. *See id.* Because Hershey's affidavit was not part of the record until after the trial court signed the default judgment, we cannot consider the affidavit as proper evidence of reasonable diligence prior to seeking substituted service on the Secretary of State.

■ As noted by Town & Country, the cases relied upon by Marrot involved restricted appeals. *See Thursby*, 663 S.W.2d at 474; *Hot Shot Messenger Serv., Inc.*, 818 S.W.2d at 906; *Thomas Petroleum Prods., Inc.*, 609 S.W.2d at 891. Because a restricted appeal, typically dealing with issues of valid issuance, service, and return of citation, is filed directly in an appellate court, "review is limited to errors apparent on the face of the record." *See Fidelity &*

*Guar. Ins. Co. v. Drewery Constr. Co., Inc.,* 186 S.W.3d 571, 573 (Tex.2006).

█ Here, Marrot is appealing after it filed a motion for new trial, which was denied. When a default judgment is attacked by a motion for new trial or bill of review in the trial court, the record is not so limited and the "parties may introduce affidavits, depositions, testimony, and exhibits to explain what happened." *Id.* at 573–74. This allows the parties, in the trial court, to address the elements of *Craddock* or a bill of review. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.1939) (requiring new trial if defendant shows (1) default was neither intentional nor result of conscious indifference, (2) meritorious defense, and (3) new trial would cause neither delay nor undue prejudice); *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996, 998 (Tex.1950) (requiring that default judgment be set aside in bill of review proceeding if defendant shows (1) meritorious defense to plaintiff's cause of action, (2) which he was prevented from making by extrinsic fraud, accident, or wrongful conduct of opposing party, and (3) that excuse offered is unmixed with any fault or negligence of his own). Obviously, a trial court would need to hear and consider evidence regarding these elements before granting or denying a motion for new trial or deciding whether or not to set aside a default judgment in a bill of review.

█ However, the critical issue before us is whether service upon the defendant was defective in the first place, not "Why did the defendant not appear?" *See Fidelity & Guar. Ins. Co.,* 186 S.W.3d at 574. In other words, did the trial court err in entering a default judgment against Marrot on the record before it at the time that it entered the default judgment? A trial court's jurisdiction is dependent upon citation issued and served in a manner provided for by law. *Wilson,* 800 S.W.2d at 836. As noted above, unless the record affirmatively shows "at the time the default judgment is entered" an appearance by the defendant, proper service of citation, or a written memorandum of waiver, a trial court does not have in personam jurisdiction to enter the default judgment. *Am. Universal Ins. Co.,* 725 S.W.2d at 766. Town & Country did not present Hershey's affidavit, in which he testified about his service attempt on Rothenberg, to the trial court until after the trial court had entered the default judgment against Marrot. As noted by Marrot, the record, prior to the entry of the default judgment, contains no evidence that Town & Country could not "with reasonable diligence" find Rothenberg at the registered office.

Accordingly, we hold that Town & Country's substituted service on the Secretary of State was defective and the default judgment in this case cannot stand. *See Wilson,* 800 S.W.2d at 837; *Ingram Indus., Inc.,* 121 S.W.3d at 34. We further hold that the trial court erred in granting the default judgment, not setting it aside, and in denying Marrot's motion for new trial. Having so held, we need not consider Marrot's second and third issues.

We sustain Marrot's first issue.

### Conclusion

We reverse the judgment of the trial court and remand the cause for proceedings consistent with this opinion.