**Opinion filed March 18, 2021**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-19-00080-CV
_____

## PIRATE OILFIELD SERVICES, INC. AND MARK ANTHONY TORRES, Appellants

## V.

## MICHAEL CUNNINGHAM, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV54325**

### O P I N I O N

This is a restricted appeal arising from a no-answer default judgment. The primary issue on appeal concerns whether service of process strictly complied with the applicable rules. The trial court entered a default judgment against Appellants, Pirate Oilfield Services, Inc. and Mark Anthony Torres, in favor of Appellee, Michael Cunningham. In two issues, Appellants contend that service of process was

defective against both Pirate Oilfield and Torres. We affirm the judgment of the trial court.

*Background Facts*

Cunningham and Torres were original shareholders of Pirate Oilfield. Both Cunningham and Torres guaranteed a loan that Pirate Oilfield received from a bank. Cunningham subsequently transferred all of his stock in Pirate Oilfield to Torres in exchange for an agreement from Pirate Oilfield and Torres to indemnify Cunningham for the debt. Pirate Oilfield later defaulted on the loan, and Pirate Oilfield failed to pay the accelerated amount demanded by the bank. The bank then required Cunningham to pay the amounts, and Cunningham paid over $1,140,000 toward satisfaction of the debt. Torres failed to honor his own guaranty, and neither Torres nor Pirate Oilfield indemnified Cunningham for the amounts paid. Cunningham sued both Pirate Oilfield and Torres for subrogation and indemnity.

Torres was Pirate Oilfield's registered agent for service, and the registered address stated that Torres could be served at 5412 Canyon Oaks Dr., Lago Vista, Texas 78465. Citation was issued for service on Pirate Oilfield and Torres, and process server George Castillo unsuccessfully attempted to serve Torres at the above address. Castillo attempted service at the registered address but was unsuccessful because the address was "a locked, gated property with no access. Phone number for [Pirate Oilfield and Torres] is no longer in service. Further research showed new owners are listed at address. Registered agent no longer at registered office listed above." On Castillo's recommendation, service was later made on the Texas Secretary of State. The secretary of state received the citation and petition and forwarded them to Torres. However, the documents were returned to the secretary of state with the notation: "Return to Sender, Not deliverable as Addressed, Unable to Forward." Cunningham filed the return with the trial court.

2

Through another process server, Tony Garcia, Cunningham attempted to serve Torres personally at two other possible addresses. No one answered at either address when Garcia attempted service, but Garcia confirmed with the apartment manager of one of the locations that Torres lived there. Garcia left his business card and a note on Torres's apartment door multiple times, asking Torres to call him. Garcia returned to Torres's apartment to attempt service, but no one answered. Garcia noticed, however, that the note which he earlier attached to the door was no longer there.

The trial court granted Cunningham's motion for substituted service on Torres and ordered that substituted service be made by posting at Torres's Faudree Rd. address. Garcia served the citation by posting, and the return was filed with the trial court the next day. A month after the return was filed, the trial court entered a no-answer default judgment against Torres and Pirate Oilfield for liquidated damages. This appeal followed.

*Analysis*

*I. Standard of Review*

Appellants contend that the trial court erred in entering default judgment because service of citation was defective. This court generally reviews de novo whether service was defective. *Creaven v. Creaven*, 551 S.W.3d 865, 870 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

In a restricted appeal, such as the case here, it is well settled that strict compliance with the rules of service of citation is required for a default judgment to withstand a direct attack. *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020) (per curiam) (citing *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)); *see generally* TEX. R. CIV. P. 99(a), 124. Because no-answer default judgments are disfavored, Texas courts have construed "strict compliance" to mean

3

just that; there are no presumptions in favor of valid issuance, service, or return of citation. *Spanton*, 612 S.W.3d at 316. "Service of process that does not strictly comply with the rules' requirements is 'invalid and of no effect.'" *Id.* at 317 (quoting *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985)).

However, strict compliance does not require "obeisance to the minutest detail." *See Spanton*, 612 S.W.3d at 317 (citing *Cuetara v. DSCH Capital Partners, LLC*, No. 03-16-00078-CV, 2016 WL 3917181, at *2 (Tex. App.—Austin July 14, 2016, no pet.) (mem. op.)). "As long as the citation and return show, with reasonable certainty, that the citation was served on the defendant in the suit, service of process will not be invalidated." *Regalado v. State*, 934 S.W.2d 852, 854 (Tex. App.—Corpus Christi–Edinburg 1996, no writ). To prevail on a restricted appeal, Appellants must demonstrate that (1) notice of the restricted appeal was filed within six months of the judgment being signed; (2) they were parties to the underlying lawsuit; (3) they did not participate in the trial; and (4) error is apparent on the face of the record. TEX. R. APP. P. 26.1(c), 30; *Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (citing *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004)).

The only element at issue in the instant case is whether error is apparent on the face of the record. Unlike the first three elements, whether error is apparent on the face of the record is not a jurisdictional requirement, and "[t]he task of determining error on the face of the record ultimately requires an analysis of the merits of the appellant's grounds for appeal." *Ex Parte E.H.*, 602 S.W.3d 486, 495–97 (Tex. 2020). For purposes of a restricted appeal, "the face of the record" consists of all papers on file in the appeal, including the reporter's record. *DSC Fin. Corp. v. Moffitt*, 815 S.W.2d 551 (Tex. 1991).

4

*II. Service on Pirate Oilfield*

In their first issue on appeal, Appellants contend that service was defective as to Pirate Oilfield because Castillo's process-server certification had expired prior to attempting service on Pirate Oilfield. Castillo first attempted service on March 21, 2018. In his affidavit following this attempted service, Castillo stated that his certification expired on August 31, 2017. However, the return of citation that followed service through the secretary of state noted that Castillo's certification expired on August 31, 2020. Appellants assert that, because Castillo's certification expired prior to attempting service, Castillo could not legally attempt service and that, therefore, service did not strictly comply with the rules. *See* TEX. R. CIV. P. 103, 107. We disagree.

A process server is certified by the commission under order of the Texas Supreme Court to serve process. TEX. GOV'T CODE ANN. § 156.001(2) (West 2019). A process server must generally be certified in order to be authorized to attempt service of citation. *See id.*; TEX. R. CIV. P. 103; TEX. R. JUD. BRANCH CERT. COMM. 3.2. When service is attempted by a process server, the return of service must include "his or her identification number and the expiration date of his or her certification." TEX. R. CIV. P. 107(b)(10).

However, Section 5.251(1)(B) of the Texas Business Organizations Code is an independent statute that provides its own rules for substituted service and is not governed by Rules 106(b) and 107 of the Texas Rules of Civil Procedure. *BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 828 (Tex. App.—Eastland 2012, no pet.); *see* TEX. BUS. ORG. CODE ANN. § 5.251(1)(B) (West 2020). Under Section 5.251(1)(B), the secretary of state is an agent of an entity for purposes of service of process on the entity if the entity is a filing entity and "the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity." BUS. ORG.

§ 5.251(1)(B).   The certificate of the secretary of state constitutes conclusive evidence that process was served.  *BLS Dev., LLC*, 359 S.W.3d at 828; *see Marrot Commons, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Because service was conducted pursuant to Section 5.251(1)(B), it is immaterial whether Castillo was properly certified when he attempted service on Pirate Oilfield on March 21, 2018, and service did not need to comply with Rule 107. Moreover, the secretary of state sent a certificate that service was received by its office and forwarded to Pirate Oilfield's registered address, constituting conclusive evidence that process was served.  *See BLS Dev., LLC*, 359 S.W.3d at 828.

Castillo delivered the documents to the secretary of state on March 29, 2018. The mere fact that Castillo may or may not have been certified when he attempted service on March 21, 2018, is no evidence that Castillo was not certified on March 29, 2018, when Castillo delivered the documents to the secretary of state—especially in light of the fact that the return of service clearly indicates that Castillo's certification expired on August 31, 2020.

Whether service was proper depends upon whether Cunningham used reasonable diligence in attempting to find Torres at the registered address.  *See* BUS. ORG. § 5.251(1)(B).   Appellants contend that Cunningham failed to exercise reasonable diligence in attempting to find Torres because there was only a single prior attempt at service and no effort to determine the correct address by other means. We disagree.

This court has previously held that "[a]s long as the record as a whole shows that the registered agent could not with reasonable diligence be found at the registered office, Section 5.251(1)(B) permits service on the secretary of state." *BLS Dev., LLC*, 359 S.W.3d at 827 (citing *Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.*, 121

S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). In *BLS*, the process server stated in an affidavit that he had attempted service at the registered address once but that the property was vacant. *Id.* The process server did not attempt any other service before exercising substituted service under Section 5.251(1)(B). *Id.* We noted that Section 5.251(1)(B) permits service on the secretary of state if

> "the registered agent of the entity cannot with reasonable diligence be found *at the registered office of the entity*." The statute does not require that an attempt be made to find the registered agent at any other place than at the entity's registered office. Therefore, the process server's attempts to find the registered agent at the second address, or at any other address, were unnecessary and are irrelevant to our determination of reasonable diligence. The only relevant attempt of service, for purposes of determining reasonable diligence, is the process server's sole attempt at service on the registered agent at the registered office.

*Id.* at 827 (citations omitted) (quoting BUS. ORG. § 5.251(1)(B)).

Here, the record shows that Castillo attempted service at the registered address on file; however, there was a locked gate at the entrance of the property, and Castillo could not gain access. Castillo also attempted to use the phone number on file to contact Pirate Oilfield, but the phone number was no longer in service. Castillo additionally researched who the current owners of the listed address were and discovered that new owners were listed at the address. The record clearly provides sufficient evidence that Cunningham and the process server conducted reasonable diligence in attempting to find Pirate Oilfield at the listed address. *See Ingram Indus.*, 121 S.W.3d at 34 (holding one attempt to serve an entity constituted reasonable diligence when the registered agent no longer occupied the registered address and the people occupying the address had been living there for ten years); *cf In re FDB Pools, Inc.*, 541 S.W.3d 391, 394 (Tex. App.—Amarillo 2018, no pet.) (holding that reasonable diligence was not present where the process server never attempted to personally serve the defendant and conducted no relevant or helpful

research to locate the defendant). As noted above, the process server was not required to attempt to locate Torres at any place other than the registered office. *See BLS Dev., LLC*, 359 S.W.3d at 827. Because the listed address was occupied by new property owners, "any other attempts at the registered address would have been futile." *Id.* For the reasons stated above, Cunningham conducted reasonable diligence in attempting to locate Torres at the registered address and was permitted to serve the secretary of state. Accordingly, service was not defective against Pirate Oilfield, and the trial court did not err in granting default judgment. We overrule Appellants' first issue.

### III. Service on Torres

In their second issue, Appellants contend that service was defective as to Torres for multiple reasons. Appellants first contend that service was defective as to Torres because the order for substituted service did not include a street address number. Reviewing the face of the record consisting of all documents in the file, we note that Cunningham's motion for substituted service, the process server's accompanying affidavit, and the return of citation all state that Torres may most likely be served at "*4001* Faudree Rd., Apt. L202, Odessa, TX 79765" (emphasis added). However, the trial court's order authorized substitute service "on the front door of Apartment L202 at Faudree Rd., Odessa, TX 79765." Appellants assert that, because the order failed to include the "4001" within the street address, the order was legally insufficient and therefore could not effectuate valid service. Based on the record as a whole, we disagree.

Appellants rely solely upon *Langdon v. Gilbert* in support of their contention that an address's incomplete description constitutes reversible error. No. 03-14-00491-CV, 2014 WL 7464095, at *3 (Tex. App.—Austin Dec. 31, 2014, no pet.) (mem. op.). However, *Langdon* is inapplicable because that case was presented from

a bill of review, while this case was presented as a restricted appeal. *Id.*; *see In re M.C.B.*, 400 S.W.3d 630, 633 (Tex. App.—Dallas 2013, no pet.) (noting that caselaw involving a restricted appeal is inapplicable to a case involving a bill of review).

Regardless, the order is not defective on its face. Rule 106 of the Texas Rules of Civil Procedure authorizes a court to order substituted methods of service. Generally, Texas law prudently prefers personal service over substituted service. *Creaven*, 551 S.W.3d at 870. "When the plaintiff uses substituted service, Texas law places a burden on the plaintiff to prove that he or she served the defendant in the manner required by the applicable rule." *Id.* (citing *Vespa v. Nat'l Health Ins. Co.*, 98 S.W.3d 749, 751 (Tex. App.—Fort Worth 2003, no pet.)). When a court orders substituted service, the only authority for the service is the order itself, and therefore "any deviation from the trial court's order necessitates a reversal of the default judgment based on service." *Id.*; *see Spanton*, 612 S.W.3d at 316–18. As noted briefly above, strict compliance with the rules—and in this case, with the court *order*—does not necessarily mean "obeisance to the minutest detail." *See Spanton*, 612 S.W.3d at 317. An important purpose of requiring service of process is to give citizens the opportunity to receive fair notice of legal proceedings, and the appellate review of same is to examine the fairness of that effort. "It is the service, and not the return, which gives the court jurisdiction over the defendant. . . . The return of citation is but the certificate of the officer as to where, when and how it was executed." *Walker v. Brodhead*, 828 S.W.2d 278, 282 (Tex. App.—Austin 1992, writ denied) (alteration in original) (quoting *Gunter's Unknown Heirs & Legal Representatives v. Lagow*, 191 S.W.2d 111, 113 (Tex. App.—Austin 1945, writ ref'd)). "As long as the record as a whole, including the petition, citation, and return, shows that the citation was served on the defendant in the suit, service of process

will not be invalidated." *Williams v. Williams*, 150 S.W.3d 436, 443–44 (Tex. App.—Austin 2004, pet. denied).

The Supreme Court of Texas recently clarified in *Spanton* that discrepancies in addresses between the court order and return of service "may be mere details when the order authorizes substitute service wherever the defendant could be found or when the defendant is indisputably personally served." *Spanton*, 612 S.W.3d at 317. Additionally, discrepancies may be mere details if there is evidence that the two addresses are in fact the same address. *See id.* at 317–18; *see also Creaven*, 551 S.W.3d at 874 (holding substitute service ineffective when "the Affidavit of Service reflects a different street name than the street name in the substituted service order, and there is no evidence in the record that these addresses refer to the same place"). Otherwise, Texas law has "repeatedly held that discrepancies in the defendant's name or address prevent any implication or presumption of proper substitute service." *Spanton*, 612 S.W.3d at 317.

While at first blush the facts presented in *Spanton* and the facts in this case appear similar, there are critical differences apparent from reviewing the entire record in this matter that distinguish it from *Spanton*. *See id.* at 316–18. In *Spanton*, neither the trial court nor the court of appeals could with certainty determine where service had actually occurred. *See id.* at 316–17 (citing *Spanton v. Bellah*, 612 S.W.3d 41, 46–47 (Tex. App.—Austin 2019)). There, the entire record reflected that substituted service could best be effected at an address on *Heathers Hill*—where the court's order authorized substituted service. *See id.* at 318. The return of service, however, stated that execution occurred at *Heather Hills Drive*. *See id.* The trial court, supported by the record, required substituted service on one street and the return of service reflected service on what, when objectively viewed, could have

been a different street. *See id.* Thus, the Texas Supreme Court found a defect in service. *See id.* That is not the case in this matter.

Here, both the trial court and this court can determine where service occurred from the face of the record. The entire face of the record, reviewed as a whole, establishes that the address in the court's order in fact refers to the same address where service was effectuated. The trial court's order merely failed to include the number 4001 that had been provided to it throughout the record as the place of attempted personal service and the abode of Torres. The return of service faithfully records that it was indeed executed at the address that appears throughout the record. While the transcription to the order somehow dropped the number, we can be sure of the exact location where service actually occurred, which precisely corresponds to the proper address found in the rest of the record read as a whole.

The return shows service at the full address, and Appellants do not contend that such address within the return of service was not "defendant's usual place of abode" or an address where Torres did not live. The trial court based its order on the facts contained in the motion for substituted service and supporting affidavit, and those documents refer only to one address on Faudree Rd.—namely, 4001 Faudree Rd., Apt. L202. Following the return of service, the trial court entered a default judgment. The return of service was on file in the record at the time of the judgment, and the trial court specifically concluded that the service was properly executed:

> The defendants, although having been duly and legally cited to appear and answer, failed to appear and answer, and wholly made default.
>
> Citation was served according to law and returned to the clerk where it remained on file for the time required by law. *The Court has read the pleadings and the papers on file . . . .*

(Emphasis added). The referenced "papers on file" included the return of service.

The facts and holding in *Pratt v. Moore*, 746 S.W.2d 486 (Tex. App.—Dallas 1988, no writ), are applicable here. Under similar facts, the court in *Pratt* determined that the differences in addresses did not defeat strict compliance, holding, "Neither Rule 106 . . . nor case law requires an order for substituted service to have an accurate address in the order for substituted service."[1] *Id.* at 488; *see Mylonas v. Tex. Comm. Bank-Westwood*, 678 S.W.2d 519, 523 (Tex. App.—Houston [14th Dist.] 1984, no writ); *Sessions v. Price Drilling Co.*, 337 S.W.2d 368, 370–71 (Tex. App.—Fort Worth 1960, writ ref'd n.r.e.).

Similarly, Rules 106 and 107 as *currently* written do not on their face require the trial court's *order* for substituted service to recite the complete address. Under Rule 106(b), "the defendant's usual place of business or usual place of abode or other place where defendant can probably be found," as stated in the motion and supported by affidavit, are the only listed locations where "the court may authorize [substituted] service." TEX. R. CIV. P. 106(b). Here, the only location in the motion supported by affidavit per Rule 106(b) is "the place of abode" uncontradictorily stated within the motion and affidavit as "4001 Faudree Rd., Apt. L202, Odessa, TX 79765." The order of the trial court was therefore "in strict compliance" with Rules 106 and 107. That the order states "the front door of Apartment L202 at Faudree Rd., Odessa, TX 79765 which is the defendant's usual place of abode," does not breach the stated requirements of those rules, nor does it violate the Texas Supreme

---

[1]Our sister court in *Creaven v. Creaven* determined that this reasoning in *Pratt* no longer applies because "*Pratt* was decided under a previous version of Rule 107, which governs the return of service. The current version . . . requires certain information be included in the return of service, including 'the address served.'" 551 S.W.3d at 872. We disagree. *Creaven* expressly acknowledges that Rule 107 applies to a *return of service*, but this specific holding in *Pratt* expressly addresses the contents of a *court order* pursuant to the requirements of Rule 106, not Rule 107. The amendment to Rule 107 has no bearing on whether a court order must include a full address. Further, that same court's statements in *Martell v. Texas Concrete Enterprise Readymix, Inc.* constitutes a tacit admission that only where Rule 107 amendments govern and are inconsistent to returns of service should pre-2012 cases on service and returns of service be disregarded. 595 S.W.3d 279, 285 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (clarifying that "[*Creaven*] did not suggest that *all* pre-2012 cases concerning Rule 107 had been abrogated").

12

Court's recent holdings expressed in *Spanton*. For these reasons, Appellants fail to establish that the order was fatally defective and that service did not strictly comply with the trial court's order on this ground.

Appellants next contend that service was defective against Torres because the process server's return did not specify the manner of service. The trial court expressly ordered that the return of service "must state when and how the citation was served." Appellants assert that the relevant portion of the return of service "is unintelligible without reference to facts outside the record" and, thus, did not comply with the court's order. We disagree.

As stated above, the return of service must strictly comply with the requirements set forth in the court order authorizing substituted service. *Spanton*, 612 S.W.3d at 317. Here, the return of service clearly states that service was conducted upon "Mark Anthony Torres by Posting." Although the term "Posting" is handwritten, and what is provided to the trial court is a photocopy, the handwritten term is clear enough to conclude that the return states that posting is how the citation was served. Therefore, Appellants fail to establish that the return of service did not strictly comply with the court order on this ground.

Appellants also contend that service was defective against Torres because the return states that it was served at an impossible time. The trial court's order authorizing substituted service required the return to state "when . . . the citation was served." In the return, the process server stated that the documents "[c]ame to hand on the 29th day of June, 2018," but subsequently stated that the documents were served on "7/30/20." Appellants assert that because the return incorrectly stated that the year of service was 2020, the return violated Rule 107 as well as the trial court's order. We disagree.

13

Rule 107 states that a return of service must include, among other things, the date of service. TEX. R. CIV. P. 107(b)(7). While a return of service must strictly comply with the applicable rules, "a return should be given a fair, reasonable, and natural construction to give effect to its plain intent and meaning." *Dole v. LSREF2 APEX 2, LLC*, 425 S.W.3d 617, 621 (Tex. App.—Dallas 2014, no pet.). An abundance of Texas caselaw exists which specifically addresses whether or not defects in dates contained in returns of service are fatal defects in service. *See, e.g.*, *Martell v. Tex. Concrete Enter. Readymix, Inc.*, 595 S.W.3d 279, 282 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Dole*, 425 S.W.3d at 621–22; *Hunt v. Yepez*, No. 03-04-00244-CV, 2005 WL 2043897, at *3 (Tex. App.—Austin Aug. 24, 2005, no pet.) (mem. op.); *Goodman v. Oakley*, No. 14-01-01004-CV, 2003 WL 297517, at *1 (Tex. App.—Houston [14th Dist.] Feb. 23, 2003, no pet.) (mem. op.); *TAC Americas, Inc. v. Boothe*, 94 S.W.3d 315, 321 (Tex. App.—Austin 2002, no pet.); *Pratt*, 746 S.W.2d at 488. Typically, cases that have found defective dates in the return of service nonfatal also contain the correct date located elsewhere in the record. *See Dole*, 425 S.W.3d at 621–22; *Goodman*, 2003 WL 297517, at *1. Additionally, this court found a single Texas case which takes a step further than the holdings of cases like *Dole* and *Goodman*. *See generally Pratt*, 746 S.W.2d at 488. In *Pratt*, the court found that a defect in inconsistent dates was not fatal, even though the correct date could not be inferred from anywhere else in the record. *See id.* The court reasoned that the service date "November" was an obvious typographical error, and no reasonable interpretation could be placed on this defect in the return other than construing the date to mean "October." *See id.* In most other cases, defects in dates—even the slightest defects—are considered fatal and are grounds for reversal of a default judgment. *See Martell*, 595 S.W.3d at 282; *Hunt*, 2005 WL 2043897, at *3; *Boothe*, 94 S.W.3d at 321.

Assuming *arguendo* that the dates in the instant case are facially defective, the case before us is distinguishable from those cases that hold that defective dates are fatal. For example, the majority of cases that hold a defect in dates to be fatal typically have dates that are facially inconsistent and irreconcilable. *See Martell*, 595 S.W.3d at 282 (return stated that the process server received the process on Jan. 5, 2018, and subsequently executed it on Jan 26, 2017); *Hunt*, 2005 WL 2043897, at *3 (return stated that petition was served on November "39th," while other parts stated it was served on November "28th"); *Boothe*, 94 S.W.3d at 318 (return stated the process server received the citation on November 19, 2001, at "Time: 12:23:26" and served it earlier that same day at "Time: 12:15:00"). In these cases, the courts were not asked to—as they could not—construe unambiguous, definite dates to avoid misinterpretation; rather, the courts were asked "to infer and substitute" an entirely different date. *Martell*, 595 S.W.3d at 283; *see Hunt*, 2005 WL 2043897, at *3; *Boothe*, 94 S.W.3d at 321.

In the instant case, the return of service merely states that service occurred on "7/30/20." Although Appellants assert that this implies service occurred on July 30, 2020, this is not necessarily the case; in fact, viewing the record as a whole, service in 2020 would be impossible. Unlike the above cases in which the courts were unable to fairly construe a definite, unambiguous date to mean an entirely different date, Cunningham asserts—and we agree—that it is possible and fair to construe "7/30/20" as an incomplete version of "7/30/2018." The date "20" does not unambiguously and definitely mean "2020"; it could just as well mean "20__" (the last 2 digits of the year 2018 missing). Reviewing the entire record as a whole, the fair and reasonable construction is that the date was written incompletely, especially in light of the fact that every other relevant date contained in the return is listed as a four-digit number, not two. Moreover, the instant case contains other places in the

record that support a fair construction of service occurring in 2018. For example, the process server signed the return under oath on July 30, 2018. Additionally, the return was attached to the citation of service itself, which contained a district clerk file-stamped date of "7/31/2018 9:45 AM." Further, the original petition in this matter was filed on March 12, 2018.

For these reasons, we hold that the instant case is distinguishable from the *Martell* and *Boothe* line of cases and that it more closely resembles the *Dole* and *Goodman* line of cases. After reviewing the face of the record as a whole, service could not have occurred before suit was filed in 2018, and service could not have occurred after the clerk's file-stamped return date. We conclude that the only fair and reasonable construction of the return is that service occurred on July 30, 2018. In this matter, the date of service listed as "7/30/20" is not the type of defect that defeats strict compliance. Therefore, the record does not support Appellants' contention that the return fails to strictly comply with the rules or the court's order of substituted service.

Lastly, Appellants contend that service was defective against Torres because the return did not state that the trial court's *order* authorizing substituted service was posted on the front door. The trial court's order stated that "service . . . shall be made . . . by posting true copies of the citation, the plaintiff's original petition, *and this order*, on the front door" (emphasis added). Appellants contend that, because the return of service did not indicate that the court order was served along with the citation and petition, the return did not strictly comply with the court order. We disagree.

The caselaw to which Appellants cite is inapplicable to the current case. *See generally Daigrepont v. Preuss*, No. 05-18-01271-CV, 2019 WL 2150916, at *4 (Tex. App.—Dallas May 17, 2019, no pet.) (mem. op.); *Vespa*, 98 S.W.3d at 751–

53; *Dolly v. Aethos Commc'ns Sys., Inc.*, 10 S.W.3d 384, 389 (Tex. App.—Dallas 2000, no pet.). In those cases, the return of service showed that the process server placed only the citation and petition on the defendant's door. *See Daigrepont*, 2019 WL 2150916, at *4; *Vespa*, 98 S.W.3d at 751–53; *Dolly*, 10 S.W.3d at 389. The records were entirely devoid of any evidence indicating that the court order was served along with the other documents. *See Daigrepont*, 2019 WL 2150916, at *4; *Vespa*, 98 S.W.3d at 751–53; *Dolly*, 10 S.W.3d at 389.

Here, the return of service states that a copy of the plaintiff's original petition and citation were served by posting at the defendant's address. Although the return did not mention service of the court order in the same sentence as service of the citation and petition, Appellants expressly admit that "the process server appears to reference the court order ('Mark Anthony Torres . . . per court attached (sic)' under the 'Name' field)" in the return of service. Applying a fair, reasonable, and natural construction to the return's language indicates that the process server attached the order authorizing substituted service when he posted the petition and citation to the front door of Torres's apartment. *See also Brown v. Clark Cincinnati, Inc.*, No. 2-02-378-CV, 2003 WL 22147555, at *6 (Tex. App.—Fort Worth Sept. 18, 2003, no pet.) (mem. op.) (holding that a return constituted prima facie evidence that the return complied with the order when the return stated that service was delivered "as allowed by 'order for substituted service' *attached* in person a true copy of this citation"). If the order was attached, it necessarily follows that the order was served along with the petition and citation. Therefore, the return constitutes prima facie evidence that service complied with the court order by posting all of the required documents, and Appellants fail to demonstrate that the return did not strictly comply with the order. Accordingly, the trial court did not err in granting a no-answer default summary judgment against Torres. We overrule Appellants' second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


March 18, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.