

# NUMBER 13-09-00198-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

ROBERT SUTHERLAND, JESSE GARZA AND
SOUTHERN CUSTOMS PAINT AND BODY,           **Appellants,**

**v.**

ROBERT KEITH SPENCER,                                  **Appellee.**

---

### On appeal from the County Court at Law No. 4
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Benavides**

This is an appeal from the denial of a motion for new trial after a default judgment

was entered in favor of appellee, Robert Keith Spencer, and against appellants, Robert

Sutherland, Jesse Garza,[1] and Southern Customs Paint and Body ("Southern Customs"). By one issue, comprising two sub-issues, appellants argue that the trial court abused its discretion by denying their motion for new trial. We affirm.

## I. BACKGROUND

### A. Facts

On January 8, 2007, Spencer took his 1965 Corvette to Southern Customs to have work performed on it. Robert and Jesse are the co-operators of Southern Customs. The parties entered into a service contract to have the work completed in two months for a total of $7,500. On June 20, 2007, Spencer paid an additional $2,500 for additional work. During the subsequent months, work was not completed and irreplaceable parts and pieces of the vehicle were lost. Spencer alleges that when the vehicle was picked up on June 29, 2007, the job was not complete, and the work was "minimal and shoddy."

### B. Procedural History

On December 18, 2008, Spencer sued appellants for violations of the Deceptive Trade Practices Act ("DTPA"). *See* TEX. BUS. & COM. CODE ANN. § 17.46 (Vernon Supp. 2009). On the same day, service was requested, and citations were issued for each of the appellants. On December 19, 2008, a civil process server served Robert, Jesse, and Southern Customs. One citation named "Jesse Garza" as the person to be served; however, the return stated that the citation was served on "Jesse de la Garza." The citations and returns were filed with the clerk on the same date. The deadline for answering Spencer's lawsuit was January 12, 2009. No answer was filed. On January 16,

---

[1] Appellants assert that "Jesse Garza" is actually "Jesus de la Garza" or "Jesse de la Garza." This contention forms the basis of their first issue on appeal. For clarity, we will use appellants' first names throughout the opinion, unless otherwise noted.

2

2009, a default judgment was signed and entered against appellants. The judgment awarded Spencer $33,868.54 in unliquidated damages. The court further found that appellants' conduct was intentional and awarded $101,605.62, which is three times the economic damages, *see id.* § 17.50(b)(1) (Vernon Supp. 2009), and attorney's fees of $10,312.50.

On February 6, 2009, appellants filed a motion for new trial. They filed an amended motion on February 19, 2009. Affidavits from Robert and Jesse were attached to the motions. The affidavits assert that Robert and Jesse received "the papers", but did not know that any action was required. They put "the papers" on their desk and forgot about them. They did not know that they were obligated to do anything with "the papers" until they received the default judgment. The affidavits further set forth a meritorious defense on the grounds that Robert and Jesse agreed to do the job and satisfactorily performed the work. Robert and Jesse did not know that Spencer was dissatisfied with the job until they received a letter from Spencer's attorney in 2009.

On February 18, 2009, the court held a hearing on the motion for new trial.[2] Civil processor Santos Ronje testified that he had served Robert and Jesse. He stated that the documents stated that "you're sued." A demand letter under the DTPA was also introduced into evidence, and it detailed Spencer's allegations and demands for damages. The demand letter states that if the issues were not resolved, Spencer would file a lawsuit. Robert and Jesse responded to the letter.

On February 23, 2009, Spencer filed a response to appellants' amended motion for new trial. As evidence, Spencer attached the affidavit of Santos Ronje, who stated that

---

[2] The February 18, 2009 hearing on the motion for new trial was reset for March 3, 2009 because appellants' attorney did not attend the February 18, 2009 hearing due to a calendaring error.

he served both individuals at their place of employment, that he told them that they were being sued, and that a record check of Jesse showed that he had been arrested three times.

After a hearing on March 3, 2009, the trial court denied the motion for new trial. The trial court granted a stay of execution of judgment, and this appeal ensued.

## II. STANDARD OF REVIEW

A trial court has wide discretion in denying a motion for new trial, and we will not disturb its ruling absent of an abuse of discretion. *See In re A.P.P.*, 74 S.W.3d 570, 573 (Tex. App.–Corpus Christi 2002, no pet.) (citing *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *Coastal Banc SSB v. Helle,* 48 S.W.3d 796, 800 (Tex. App.–Corpus Christi 2001, pet. denied)). An abuse of discretion occurs if the trial court acts without any reference to any guiding rules or principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

## III. DISCUSSION

In their first sub-issue, appellants argue that the default judgment against Jesse is void because he was not properly served. Additionally, in a footnote, appellants assert, for the first time, that the default judgment against Southern Customs is void because it was not properly served.

Failure to affirmatively show strict compliance with the rules of civil procedure renders the attempted service of process invalid and of no effect. *Uvalde Country Club v. Martin Linen Supply Co., Inc.,* 690 S.W.2d 884, 885 (Tex. 1985). When a party against whom a default judgment has been entered files a motion for new trial asserting defective service, the plaintiff may present evidence to establish that the defendant has in fact been

4

served. *see Fidelity & Guar. Ins. Co. v. Drewery Constr. Co., Inc.*, 186 S.W.3d 571, 573-74 (Tex. 2006) (per curiam); *see* also *PPI Tech. Servs. v. Christian Operating Co.*, No. 09-09-00022-CV, 2009 WL 2253227, at *2 (Tex. App.–Beaumont July 30, 2009, no pet.)(memo op.). Defective service may be raised for the first time on appeal. *See Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990); *see also Houston Precast, Inc. v. McAllen Constr., Inc.*, No. 13-07-135-CV, 2008 WL 4352636, at *1 (Tex. App.–Corpus Christi Sept. 25, 2008, no pet.)(memo op.).

Appellants rely on *Uvalde Country Club* to complain that service was invalid. *See Uvalde Country Club*, 690 S.W.2d at 884-85. However, their reliance is misplaced. In *Uvalde Country Club,* the citation was served on Henry Bunting, but the petition identified "Henry Bunting, Jr." as the registered agent for service of process. *Id.* at 885. The supreme court found that this was ineffective service. *Id.*; *see Hendon v. Pugh*, 46 Tex. 211, 212 (Tex. 1876) (holding that service was ineffective when service was made on "J.N. Hendon" but the petition named "J.W. Hendon" as the defendant). The present case is distinguishable.

It is undisputed that the petition and citation named "Jesse Garza" as the defendant to be served. In his affidavit, Jesse stated that he has never used the name "Jesse Garza" and that he used either "Jesus de la Garza" or "Jesse de la Garza." The return shows that "Jesse de la Garza" was served. Additionally, the petition and citation named "Southern Customs Paint and Body" as the party to be served, but the return reflected that "Southern Custom's [sic] By [sic] delivery to Robert Sutherland" was the party actually served. Both returns are examples of misnomer.

"Misnomer occurs when the plaintiff sued the correct party but mistates the party's

5

name." *Rios v. Nw. Steel & Wire Co.*, 974 S.W.2d 932, 934 (Tex. App.–Houston [14th Dist.] 1998, no pet.) (citing *Matthews Trucking Co., Inc. v. Smith*, 682 S.W.2d 237, 238 (Tex. 1984)). When the correct defendant is served under the wrong name, the case is not one of misidentification but rather misnomer. *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4-5 (Tex. 1990). "The misnomer cases all require that the defendant was actually served with process and was not confused or misled by the misnomer." *Mansell v. Ins. Co. of the W.*, 203 S.W.3d 499, 502 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (citing *N.C. Mut. Life Ins. Co. v. Whitworth*, 124 S.W.3d 714, 719-20 (Tex. App.–Austin 2003, pet. denied); *Dezso v. Harwood*, 926 S.W.2d 371, 374 (Tex. App.–Austin 1996, writ denied); *Cockrell v. Estevez*, 737 S.W.2d 138, 139-40 (Tex. App.–San Antonio 1987, no writ)); *see Baker v. Charles*, 746 S.W.2d 854, 855 (Tex. App.–Corpus Christi 1988, no writ) ("When an intended defendant is sued under an incorrect name, jurisdiction is proper after service on the defendant under the misnomer, if it is clear that no one was misled."). "'The test seems to be whether or not the right person was sued, and whether or not he was put on notice that he, and not some other person, had been sued.'" *Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 895 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (quoting *West v. Johnson*, 129 S.W.2d 811, 815 (Tex. Civ. App.–Fort Worth 1939, writ ref'd)). "A misnomer of a defendant does not render a judgment based on personal service, even one by default, void, provided the intention to sue the defendant actually served with citation is so evident from the pleadings and process that the defendant could not have been misled." *Cockrell*, 737 S.W.2d at 140.

Here, Jesse does not argue that he was not served with the citation. In fact, the return demonstrates that he was served. Additionally, Jesse received a copy of the

6

demand letter, which informed Jesse that Spencer would sue Southern Customs and Robert and Jesse as "co-operators" of Southern Customs if his demands were not met. In his affidavit attached to the motion for new trial, Jesse confirmed that he owned fifty percent of Southern Customs and that he responded to the demand letter. Jesse does not assert that he was misled by the misnomer. Ronje, the process server, in his affidavit attached to Spencer's response to appellants' amended motion for new trial, stated that Jesse told him that the name on the lawsuit was incorrect, but, when Ronje offered to take the petition and citation back, Jesse said that he was the person being sued and to leave the documents with him. Based on the uncontroverted evidence, we conclude that service on Jesse was not defective. *See Dezso*, 926 S.W.2d 373-74.

Like Jesse, Southern Customs does not assert that it was misled by the misnomer. However, Southern Customs's claim raises a slightly different issue in that the name of the party served, "Southern Custom's [sic] By [sic] delivery to Robert Sutherland," is not the complete name of the party in the petition and citation. *See Hercules Concrete Pumping Serv., Inc. v. Bencon Mgmt. & Gen. Contracting Corp.*, 62 S.W.3d 308, 311 (Tex. App.–Houston [1st Dist.] 2001, pet. denied) (op. on reh'g) (holding, in restricted appeal, that service was defective when the return cited service on "Hercules Concrete Pumping" and not on "Hercules Concrete Pumping Service, Inc."). However, "[t]here is no showing in the record that the different names were not different companies;" the record indicates "that no confusion occurred because of the mistake in the return." *Whitworth*, 124 S.W.3d at 720 (finding defective service when "Life" was omitted from company's name on return of citation and registered agent served was not registered agent of company).

The petition and demand letter referred to "Southern Customs" as a defendant, and

7

Robert, in his affidavit attached to the motion for new trial, stated that he responded to the demand letter. The citation was served on Robert. Robert, in his affidavit, averred that he is a fifty-percent owner of Southern Customs, and neither Robert nor Jesse argue that they were misled by the return. Southern Customs does not assert that it was misled by the lack of "Paint and Body" in the return. *See id.* ("If the defendant's name is consistently wrong, but the record shows that the correct defendant is served and is not misled by being misnamed, then the defendant must appear and plead the misnomer or risk having the default judgment imposed against him withstand direct attack."). We conclude that Southern Customs Paint and Body was properly served. The default judgment against appellants is not void for defective service.

## IV. The "Craddock" Test

In their second sub-issue, appellants contend that the trial court erred by denying their motion for new trial because they satisfied the *Craddock* test. *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex. 1939). We disagree.

A trial court abuses its discretion by not granting a new trial when all three elements of the *Craddock* test are met. *Evans*, 889 S.W.2d at 268; *In re A.P.P.,* 74 S.W.3d at 573. The *Craddock* test requires the defendant to show:

> (1) the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; (2) provided the motion for a new trial sets up a meritorious defense and (3) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Evans*, 889 S.W.2d at 268 (citing *Craddock*, 133 S.W.2d at 126).

"Courts have applied the first *Craddock* prong liberally, and each case depends on its own facts." *In re A.P.P.*, 74 S.W.3d at 573 (citing *Gotcher v. Barnett*, 757 S.W.2d 398,

8

401 (Tex. App.–Houston [14th Dist.] 1988, no writ); *Harlen v. Pfeffer*, 693 S.W.2d 543, 545 (Tex. App.–San Antonio 1985, no writ)). "'In determining whether a failure to appear was due to intentional disregard or conscious indifference[,] we must look to the knowledge and acts of the defendant.'" *Evans*, 889 S.W.2d at 269 (citing *Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex. 1984)). "Conscious indifference is defined as 'the failure to take some action that would seem obvious to a reasonable person in the same circumstance.'" *Padrino Maritime, Inc. v. Rizo*, 130 S.W.3d 243, 248 (Tex. App.–Corpus Christi 2004, no pet.) (quoting *In re A.P.P.*, 74 S.W.3d at 573)). "The controlling factor under this analysis is 'the absence of an intentional failure to answer.'" *Id* at 248 (citing *Craddock*, 133 S.W.2d at 125; *In re A.P.P.*, 74 S.W.3d at 573). "The defaulting party must provide some excuse, but not necessarily a good excuse, for failing to answer in a timely manner." *In re A.P.P.*, 74 S.W.3d at 573 (citing *Norton v. Martinez*, 935 S.W.2d 898, 901 (Tex. App.–San Antonio 1996, no writ); *Gotcher*, 757 S.W.2d at 401)). "Not understanding a citation and then doing nothing following service does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements." *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (citing *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992)). In other words, "[f]ailing to file an answer intentionally or due to conscious indifference means 'the defendant knew it was sued but did not care.'" *Id.* (quoting *Fidelity*, 186 S.W.3d at 576). We conclude that appellants have not satisfied the first Craddock prong because they have not proven that their failure to timely answer was not intentional or due to conscious indifference. *See Evans*, 889 S.W.2d at 268 (citing *Craddock*, 133 S.W.2d at 126).

The affidavits of Robert and Jesse were filed with the motion for new trial and are identical in many assertions regarding how they handled "the papers" after they were

9

served:

> I remember someone coming to my shop on or about December 19, 2008, and leaving some papers with me and my partner. . . . The person who gave the papers to me did not explain what they were for or that I had any obligation to do anything in response. I had never been sued before like this and have no experience with the legal system. I briefly reviewed the papers, and placed then on the desk in my office. My desk is covered in papers concerning various matters. We do not employ a secretary or have any administrative help. My partner and I do everything. When we received the papers, it was less than a week before the Christmas holidays. The weather conditions during this period made it difficult for me to perform much labor for any customers because weather conditions adversely affect paint work on automobiles. I did return to the shop on Monday and worked part of the day . . . . I also worked briefly on Tuesday, December 23, 2008, again, just returning automobiles and scheduling work. By this time, and due, in part, to the holidays, I was not thinking about the papers that had been delivered to me at my shop. The papers had been placed on my desk but were not on my mind and were camouflaged with the other papers . . . . I did not return to the shop again after December 23, 2008, until January 5, 2009 . . . . Also during this period, my thoughts were on the holidays and things I had to do to plan and prepare for the holidays. Therefore, my thoughts were not on the papers that had been delivered to me . . . . Between January 5, 2009, and January 16, 2009, I resumed a regular schedule at the shop. During this period, I was working and not thinking about the papers that had been delivered to me. In fact, by this time, I had forgotten that about them. I also did not understand or realize that I had any obligation to do anything, including filing an answer to the papers within any time period. This was clearly a mistake on my part . . . .

Further, Robert and Jesse both acknowledged in their affidavits that they had received and responded to the demand letter: "We did receive a threatening letter from the defendant's [sic] attorney sometime in late 2007. We responded and then never heard anything again . . . ."

"Non-controverted factual allegations in the movant's motion for new trial and accompanying affidavits, if true, negate intent or conscious indifference." *Padrino Maritime Inc.*, 130 S.W.3d at 248. "If the non-movant provides evidence showing conscious

indifference by the appellant, then it becomes a fact question for the trial court to determine." *Id.* (citing *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex. App.–Corpus Christi 1990, writ denied)). "The court looks at all the evidence in the record to determine if the appellant's allegations are controverted." *Id.* (citing *Moya v. Lozano*, 921 S.W.2d 296, 299 (Tex. App.–Corpus Christi 1996, no writ)).

Spencer controverted appellants' affidavits by filing, with his response to appellants' amended motion for new trial, the affidavit of the civil process server who served the citations on Robert, Jesse, and Southern Customs. The process server averred that he told Robert and Jesse that they had been sued: "I delivered the above styled and numbered lawsuit on Robert Sutherland and Jesse de la Garza. They both asked me what the documents were[,] and I told them that they were being sued." The demand letter from the previous year threatening litigation was also in the record before the trial court. This letter serves as additional controverting evidence of the appellants' claims that they did not know the purpose of the papers that were served on them.

Appellants argue that they did not know that documents required any action on their part and that they forgot about the documents. However, the testimony of the process server contested their assertion that they did not know they had a duty to answer. Additionally, in its first few lines, the citation itself informed Robert, Jesse, and Southern Customs that they were being sued and that they must answer the suit or risk a default judgment. *See In re R.R.,* 209 S.W.3d at 115 (stating that receiving a citation, failing to understand it, and then doing nothing does not satisfy the first prong of the *Craddock* test). Further, appellants had previously received a demand letter on this claim, which included a threat of litigation. The trial court, in determining a fact question, *Padrino Martime Inc.,*

130 S.W.3d at 248, found that the appellants merely placed the documents on a desk full of papers and forgot about them and that they did not satisfy the first prong of the *Craddock* test. We will not disturb this finding on appeal. We hold that the trial court did not err by denying appellants' motion for new trial.[3] We overrule appellants' issue.[4]

## V. Conclusion

Having overruled appellants' appellate issue, we affirm the trial court's order denying appellants' motion for new trial.

 

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
12th day of August, 2010.

---

[3] Appellants also assert, in their discussion on the second *Craddock* prong, that "the amount of money awarded by the default judgment is supported by no evidence of damages." *See* Tex. R. Civ. P. 243 (requiring trial court to hear evidence of unliquidated damages); *Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc.*, 121 S.W.3d 31, 36 (Tex. App.–Houston [1st Dist.] 2003, no pet.); *see also Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984) (noting that "a judgment taken by default admits all allegations of fact set out in the petition, except for the amount of damages."). Spencer attached his affidavit to his motion for default judgment. In his affidavit, Spencer detailed his damages and the cause of each, and he affirmed that the facts recited in his affidavit were true and correct and within his personal knowledge as the plaintiff in the case. "A trial court may award unliquidated damages based on affidavit testimony." *Ingram Indus.*, 121 S.W.3d at 37 (citing *Tex. Commerce Bank v. New*, 3 S.W.3d 515, 516-17 (Tex. 1999)); *see Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 811 (Tex. App.–Waco 2007, no pet.) ("For an unliquidated claim, testimony of the total amount due is sufficient to support an award of damages, and the testimony may be supplied by affidavits.") (citing *New*, 3 S.W.3d at 517; *Barganier v. Saddlebrook Apartments*, 104 S.W.3d 171, 173 (Tex. App.–Waco 2003, no pet.); *Irlbeck v. John Deere, Co.*, 714 S.W.2d 54, 57 (Tex. App.–Amarillo 1986, no writ)). Here, the trial court rendered default judgment after considering "the pleadings, the affidavit and arguments of counsel . . . ." Spencer's affidavit included testimony of the total amount due and a breakdown of the calculations used to arrive at the total amount due. *See id.* Appellants' argument is without merit.

[4] Because we find that appellants have failed to meet the first prong of the *Craddock* test, we do not need to address the remaining two prongs. *See Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 539 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (op. on reh'g).